**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| POLARIS INNOVATIONS LIMITED, a Delaware Corporation,<br><br>        Plaintiff<br><br>v.<br><br>QUALCOMM INCORPORATED and QUALCOMM TECHNOLOGIES, INC., both Delaware Corporations,<br><br>        Defendants | CIVIL ACTION NO. 7:25-cv-00526<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Polaris Innovations Limited ("Polaris") files this Complaint against Defendants Qualcomm Incorporated and Qualcomm Technologies, Inc. (together, "Qualcomm" or "Defendants") for infringement of U.S. Patent No. 7,715,264 (the "'264 Patent"), U.S. Patent No. 7,844,798 (the "'798 Patent"), and U.S. Patent No. 8,117,526 (the "'526 Patent") (collectively, the "Asserted Patents").

## THE PARTIES

1.    Polaris Innovations Limited is a corporation organized and existing under the laws of Ireland, with its principal place of business at 77 Lower Camden Street, Dublin D02 XE80, Ireland.

2.    Defendant Qualcomm Incorporated ("QCI") is a corporation organized and existing under the laws of Delaware and maintains established places of business at 9600 N. Mopac, Suite 900, Stonebridge Plaza II, Austin, Texas 78759 and 13929 Center Lake Drive, Parmer Building 1 Austin, Texas 78753. QCI may be served in Texas via its registered agent, Prentice Hall Corp. System, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

3.    Defendant Qualcomm Technologies, Inc. ("QTI") is a corporation organized and existing under the laws of Delaware and maintains established places of business at 9600 N. Mopac, Suite 900, Stonebridge Plaza II, Austin, Texas 78759 and 13929 Center Lake Drive, Parmer Building 1, Austin, Texas 78753. QTI may be served in Texas via its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701.

4.    QTI is a wholly-owned subsidiary of QCI and, together with its affiliated subsidiaries, performs substantially all of Qualcomm's research and development efforts, its engineering operations, and its products and services businesses. *See* https://www.qualcomm.com/company. Relevant QTI-affiliated subsidiaries include, at least, Qualcomm CDMA Technologies and Qualcomm CDMA Technologies Asia Pacific Pte. Ltd.

5.    Qualcomm is one of the world's premier manufacturers of integrated circuits for the wireless device industry. Its website states that "[r]eferences to 'Qualcomm' may mean Qualcomm Incorporated, or subsidiaries or business units within the Qualcomm corporate structure, as applicable." *Id*. Qualcomm's website further states that "Qualcomm Technologies, Inc., a subsidiary of Qualcomm Incorporated, operates, along with its subsidiaries, substantially all of our engineering, research and development functions, and substantially all of our products and services businesses, including our QCT semiconductor business." *Id*.

6.    QCI, QTI, and their subsidiaries and related companies share the same management, common ownership, advertising platforms, facilities, distribution and sales channels, and accused products and product lines. In this way, QCI, QTI, and their subsidiaries and related companies operate as a singular, unitary business enterprise and are, thus, jointly, severally and communally liable for the acts of patent infringement detailed below.

7.     QCI, QTI, and their subsidiaries and related companies are doing business collectively, directly and through agents, on a persistent and ongoing basis in this District and elsewhere in the United States, and they each have regular and established places of business here.

## JURISDICTION AND VENUE

8.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.     This Court has personal jurisdiction over Qualcomm because it has engaged, and continues to engage, in continuous, systematic, and substantial activities within this State, including the substantial marketing and sale of products and services within this State and this District. Indeed, this Court has personal jurisdiction over Qualcomm because it has committed acts giving rise to Polaris' claims for patent infringement within, and directed to, this District, has derived substantial revenue from its goods and services provided to individuals and entities in this State and this District, and maintains regular and established places of business in this District, including at least its two brick-and-mortar locations in Austin, Texas:[1]

---

[1] *See* https://www.qualcomm.com/company/facilities/offices?country=USA&region=TX.



10.     Relative to patent infringement, Qualcomm has committed and continues to commit acts in violation of 35 U.S.C. § 271, and has made, used, offered for sale, sold, and imported infringing products, systems, and services in this State, including this District, and has otherwise engaged in infringing conduct within and directed at, or from, this District. Such infringing products, systems, and services (collectively, the "Accused Instrumentalities") include Qualcomm processors such as the Qualcomm Snapdragon 4, 6, 7, 8, and X Series products and other processors and platforms offered and sold by Qualcomm as described further below.

11.     Qualcomm's infringing activities have caused harm to Polaris in this District. Qualcomm and/or its partners and agents offer to sell and sell the Accused Instrumentalities within this District, and on information and belief, Qualcomm, its partners and agents, and/or their customers use the Accused Instrumentalities in this District in infringing ways. These are purposeful acts and transactions in this State and this District such that Qualcomm reasonably should know and expect that it can be haled into this Court to answer for its actions.

12.     Moreover, this Court maintains personal jurisdiction over Qualcomm because Qualcomm conducts business in this State by, among other things, "recruit[ing] Texas residents, directly or through an intermediary located in this State, for employment inside or outside this State." Tex. Civ. Prac. & Rem. Code § 17.042(3). For instance, Qualcomm lists dozens of job openings in Texas (as of Oct. 15, 2025):[2]



13.     Qualcomm also lists its job openings in Texas on LinkedIn (as of Oct. 15, 2025):[3]



14.     Further, on Qualcomm's LinkedIn page, it boasts 766 "associated members" in its Texas offices (as of Oct. 15, 2025):[4]

---

[2] https://careers.qualcomm.com/careers?location=Austin%2C%20Texas%2C%20United%20 States%20of%20America&pid=446697682796&domain=qualcomm.com&sort_by=relevance&l ocation_distance_km=8&triggerGoButton=true
[3] https://www.linkedin.com/jobs/search/?currentJobId=3991694727&distance=5&f_C=2017%2C 154985%2C162572%2C2923434%2C38387%2C595224%2C75115234&f_CR=103644278&ge oId=104472865&origin=JOB_SEARCH_PAGE_JOB_FILTER&refresh=true&sortBy=R
[4] https://www.linkedin.com/company/qualcomm/people/?facetGeoRegion=102748797



15.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Qualcomm has at least two regular and established places of business in Austin, which is in this District. Venue is further proper in this District because Qualcomm has directly infringed and/or induced the infringements of others, including its customers, in this District by offering for sale and selling Accused Instrumentalities in this District, using Accused Instrumentalities in infringing ways in this District, and inducing infringing customer use of Accused Instrumentalities in this District.

## THE ASSERTED PATENTS

16.    Polaris is the sole and exclusive owner of all right, title and interest in the '264 Patent, the '798 Patent, and the '526 Patent and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Polaris also has the right to recover all damages for past, present, and future infringements of the Asserted Patents and to seek injunctive relief as appropriate under the law.

6

17.     The '264 Patent is titled "Method and apparatus for selectively disabling termination circuitry." The '264 Patent issued on May 11, 2010 and stems from U.S. Patent Application No. 12/145,146, which was filed on June 24, 2008.

18.     The '798 Patent is titled "Command protocol for integrated circuits." The '798 Patent issued on November 30, 2010 and stems from U.S. Patent Application 11/955,659, which was filed on December 13, 2007.

19.     The '526 Patent is titled "Apparatus and method for generating a transmit signal and apparatus and method for extracting an original message from a received signal." The '526 Patent issued February 14, 2012 and stems from U.S. Patent Application No. 11/947,557, which was filed on November 29, 2007.

20.     Polaris and its predecessors complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Polaris may recover pre-suit damages.

21.     The claims of the Asserted Patents are directed to patent eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

**DEFENDANTS' PRE-SUIT KNOWLEDGE OF ITS INFRINGEMENT**

22.     Prior to the filing of this Complaint, Polaris sent Qualcomm a letter notifying Qualcomm that various of its products infringe at least one or more claims of the '264 Patent, the '798 Patent, and the '526 Patent; and that Qualcomm needs to take a license. Qualcomm has not agreed to license the Asserted Patents, and Polaris brings this action to protect its rights.

23.    The Accused Instrumentalities of this lawsuit include, but are not limited to, the products identified in Polaris' letter to Qualcomm. Qualcomm's past and continuing sales of the Accused Instrumentalities (i) willfully infringe the Asserted Patents and (ii) impermissibly usurp the significant benefits of Polaris' patented technologies without fair compensation.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. USP 7,715,264)

24.    Plaintiff incorporates the preceding paragraphs herein by reference.

25.    This cause of action arises under the patent laws of the United States and, particularly, 35 U.S.C. §§ 271, *et seq.*

26.    Polaris is the owner of all substantial rights, title, and interest in and to the '264 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringements.

27.    The '264 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on May 11, 2010, after full and fair examination.

28.    Qualcomm has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '264 Patent in this District and elsewhere in Texas and the United States by making, using, offering to sell, selling, and/or importing, and by actively inducing others to make, use, offer to sell, sell, and/or import, Qualcomm products, their components and processes, and/or products containing the same, that incorporate the fundamental technologies covered by the '264 Patent, including, but not limited to, its Snapdragon 6, 7, 8, and X Series products that support LPDDR5 or LPDDR5X memory; Qualcomm's Automotive platforms that support LPDDR5 or LPDDR5X memory, such as Snapdragon Cockpit devices and modules, Snapdragon Ride and Ride Flex devices and modules, Snapdragon Cockpit Elite devices and modules, and Snapdragon Ride Elite devices and modules; and Qualcomm's IPQ Series and

Dragonwing Platform products that support DDR4 memory (collectively, "the '264 Accused Products").

***Direct Infringement (35 U.S.C. § 271(a))***

29.    Qualcomm has directly infringed, and continues to directly infringe, one or more claims of the '264 Patent in this District and elsewhere in Texas and the United States.

30.    Qualcomm has directly infringed, and continues to directly infringe, either by itself or via its agent(s), at least Claim 1 of the '264 Patent[5] as set forth under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the '264 Accused Products. Furthermore, Qualcomm makes and sells the '264 Accused Products outside of the United States and either delivers those products to its customers, distributors, and/or subsidiaries in the United States or, in the case that it delivers '264 Accused Products outside the United States, does so intending and/or knowing that those products are destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '264 Patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

31.    Furthermore, Qualcomm directly infringes the '264 Patent through its direct involvements in, and control of, the activities of subsidiaries and agents. Subject to Qualcomm's direction and control, the subsidiaries and agents engage in activities that constitute direct infringement of the '264 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale,

---

[5] Throughout this Complaint, wherever Polaris identifies specific claims of the Asserted Patents infringed by Qualcomm, Polaris expressly reserves the right to identify additional claims and products in its infringement contentions in accordance with applicable local rules and the Court's case management order. Specifically-identified claims throughout this Complaint are provided for notice pleading only.

selling, and/or importing the '264 Accused Products. Qualcomm receives direct financial benefit from such infringements by its U.S.-based subsidiaries and agents.

32.     By way of illustration only, the '264 Accused Products perform each and every step of Claim 1 of the '264 Patent. The '264 Accused Products perform "a method of reducing power consumption by a memory device, comprising" the steps of Claim 1. For instance, the '264 Accused Products, such as the Snapdragon 8 Gen 2 Mobile Platform, support LPDDR5X memory that comply with JEDEC standards and perform the steps described below:



(Snapdragon-8-Gen-2-Product-Brief.pdf)

33.    The '264 Accused Products support LPDDR5/5X memory which can enter a "Deep Sleep Mode" that allows the LPDDR5/5X memory to manage internal circuits for low current consumption and, during a Deep Sleep mode, the LPDDR5/5X memory is almost turned off except for Self-refresh operation parts:

**7.5.8   Deep Sleep Mode**

Deep Sleep Mode is an additional Self-Refresh mode with longer Entry/Exit times allowing the SDRAM to manage internal circuits for low current consumption (specified by IDD6DS). Deep Sleep Mode is entered by Self Refresh Entry Command defined by having CS HIGH, CA[2:0] LOW, CA3 HIGH, CA4 LOW, CA5 HIGH and CA6 HIGH at the rising edge of the clock and CS don't care, CA[4:0] Valid (Valid that means it is Logic Level, High or Low), CA5 HIGH and CA6 LOW at the falling edge of the clock. Deep Sleep Mode is only allowed when read data burst is completed and SDRAM is idle state or Self Refresh state. Deep Sleep Mode state diagram is shown below.



**Figure 190 — Deep Sleep Mode State Diagram**

Once the SDRAM is entered in Deep Sleep Mode, it is recommended that Deep Sleep Mode is maintained for relatively long time to reduce Self Refresh current more efficiently. It is functionally possible that SDRAM is exited quickly after Deep Sleep Mode issued. But, the short Deep Sleep Mode duration time is of little avail to reduce IDD6 Current. tPDN_DSM is the minimum recommended time for Deep Sleep Mode duration.

In Deep Sleep Mode, SDRAM is almost turned off except for Self-refresh operation parts; this means that the data is retained during Deep Sleep mode. Deep Sleep Mode state is asynchronously exited to Self-Refresh Power Down mode when CS toggles HIGH (VIHPD (Min.)). The SDRAM must be satisfied tXSR_DSM to be fully re-powered up and then the SDRAM is ready for normal operations.

(JEDEC Standard No. 209-5C, Page 333)

34.    The '264 Accused Products perform a method that includes "disabling termination circuitry coupled to one or more input/output (I/O) signals of the memory device during at least a portion of a refresh operation performed by the memory device." For example, the '264 Accused Products support LPDDR5/5X memory and issue commands to such memory to enter a Deep Sleep Mode which turns off its CS_ODT (on-die termination) circuitry during at least a portion of the Self-Refresh operation performed by the LPDDR5/5X memory:

In Deep Sleep Mode, SDRAM is almost turned off except for Self-refresh operation parts; this means that the data is retained during Deep Sleep mode. Deep Sleep Mode state is asynchronously exited to Self-Refresh Power Down mode when CS toggles HIGH (VIHPD (Min.)). The SDRAM must be satisfied tXSR_DSM to be fully re-powered up and then the SDRAM is ready for normal operations.

When CA, CK ODT is enabled via MR11 OP[6:4], MR17 OP[3] and OP[5], the rank providing ODT will continue to terminate CA, CK bus in all SDRAM states including Active Self-refresh, Self-refresh Power-down, Active Power-down, Idle Power-down and Deep Sleep Mode. CS ODT is enabled via MR17 OP[4]; the rank providing ODT will continue to terminate the CS input in all DRAM states except Idle Power-down, Self-refresh Power-down and Deep Sleep Mode. CS ODT state goes OFF ignoring MRS ODT state after Power-Down Entry is issued and returns to MRS ODT state with Power-Down Exit.

When NT-ODT is enabled via MR11 OP[3] and MR41 OP[7:5], SDRAM provides its NT-ODT termination during Deep Sleep Mode to guarantee other ranks stable operation.

LPDDR5 SDRAM can operate in Deep Sleep Mode in both the standard and elevated temperature ranges. SDRAM will also manage Self Refresh power consumption when the operating temperature changes lower at low temperature and higher at high temperature.

Deep Sleep Mode entry and exit are shown in Figure 191 - Figure 194 and the related AC timing parameters are defined in Table 249.

(JEDEC Standard No. 209-5C, Page 333)



Figure 194 — Deep Sleep Mode Entry in Self Refresh State and Exit Timing: CS ODT Enable

(JEDEC Standard No. 209-5C, Pages 333 and 337)

35.     The '264 Accused Products perform a method that includes "re-enabling the termination circuitry prior to the memory device resuming normal operation after completion of the refresh operation." For example, the '264 Accused Products support LPDDR5/5X memory and issue commands to the memory such that, while in Deep Sleep Mode, it turns on its CS_ODT (on-die termination) circuitry prior to the completion of the Self-refresh operation and the LPDDR5/5X memory resuming normal operation:

13

In Deep Sleep Mode, SDRAM is almost turned off except for Self-refresh operation parts; this means that the data is retained during Deep Sleep mode. Deep Sleep Mode state is asynchronously exited to Self-Refresh Power Down mode when CS toggles HIGH (VIHPD (Min.)). The SDRAM must be satisfied tXSR_DSM to be fully re-powered up and then the SDRAM is ready for normal operations.

When CA, CK ODT is enabled via MR11 OP[6:4], MR17 OP[3] and OP[5], the rank providing ODT will continue to terminate CA, CK bus in all SDRAM states including Active Self-refresh, Self-refresh Power-down, Active Power-down, Idle Power-down and Deep Sleep Mode. CS ODT is enabled via MR17 OP[4]; the rank providing ODT will continue to terminate the CS input in all DRAM states except Idle Power-down, Active Power-down, Self-refresh Power-down and Deep Sleep Mode. CS ODT state goes OFF ignoring MRS ODT state after Power-Down Entry is issued and returns to MRS ODT state with Power-Down Exit.

When NT-ODT is enabled via MR11 OP[3] and MR41 OP[7:5], SDRAM provides its NT-ODT termination during Deep Sleep Mode to guarantee other ranks stable operation.

LPDDR5 SDRAM can operate in Deep Sleep Mode in both the standard and elevated temperature ranges. SDRAM will also manage Self Refresh power consumption when the operating temperature changes lower at low temperature and higher at high temperature.

Deep Sleep Mode entry and exit are shown in Figure 191 - Figure 194 and the related AC timing parameters are defined in Table 249.



**Figure 194 — Deep Sleep Mode Entry in Self Refresh State and Exit Timing: CS ODT Enable**

(JEDEC Standard No. 209-5C, Pages 333 and 337)

### *Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

36.    In addition and/or in the alternative to its direct infringements, Qualcomm has indirectly infringed and continues to indirectly infringe one or more claims of the '264 Patent by knowingly and intentionally inducing others, including its subsidiaries, agents, partners, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to

directly infringe by making, using, offering to sell, selling and/or importing into the United States the '264 Accused Products.

37. At a minimum, Qualcomm has knowledge of the '264 Patent since being served with this Complaint. Qualcomm also has knowledge of the '264 Patent since receiving a notice letter from Polaris providing details of its infringements prior to the filing of this Complaint. Since receiving notice of its infringements, Qualcomm has actively induced the direct infringements of its subsidiaries, agents, partners, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with knowledge, or willful blindness to the fact, that the acts induced constitute infringements of the '264 Patent. Indeed, Qualcomm has intended to cause, continues to intend to cause, and has taken and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '264 Accused Products, creating and/or maintaining established distribution channels for the '264 Accused Products into and within the United States, manufacturing the '264 Accused Products in conformity with U.S. laws and regulations, distributing or making available datasheets supporting use of the '264 Accused Products that promote their features, specifications, and applications, promoting the incorporation of the '264 Accused Products into end-user products, and providing technical support and/or related services for these products to purchasers in the United States.

***Damages***

38. On information and belief, despite having knowledge of the '264 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '264 Patent, Qualcomm has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of its infringements. Qualcomm infringing activities relative to the '264 Patent have

been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Polaris is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed.

39.     Polaris has been damaged by Qualcomm's infringing conduct described in this Count. Qualcomm is, thus, liable to Polaris in an amount that adequately compensates Polaris for Qualcomm's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 7,844,798)

40.     Plaintiff incorporates the preceding paragraphs herein by reference.

41.     This cause of action arises under the patent laws of the United States, and, particularly, 35 U.S.C. §§ 271, *et seq.*

42.     Polaris is the owner of all substantial rights, title, and interest in and to the '798 Patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

43.     The '798 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on November 30, 2010, after full and fair examination.

44.     Qualcomm has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '798 Patent in this District and elsewhere in Texas and the United States by making, using, offering to sell, selling, and/or importing, and by actively inducing others to make, use, offer to sell, sell, and/or import, Qualcomm products, their components and processes, and/or products containing the same, that incorporate the fundamental technologies covered by the '798 Patent, including, but not limited to, its Snapdragon 6, 7, 8, and

X Series products that support LPDDR5 or LPDDR5X memory, and Qualcomm's Automotive platforms that support LPDDR5 or LPDDR5X memory, such as Snapdragon Cockpit devices and modules, Snapdragon Ride and Ride Flex devices and modules, Snapdragon Cockpit Elite devices and modules, and Snapdragon Ride Elite devices and modules (collectively, "the '798 Accused Products").

***Direct Infringement (35 U.S.C. § 271(a))***

45.    Qualcomm has directly infringed, and continues to directly infringe, one or more of claims of the '798 Patent in this District and elsewhere in Texas and the United States.

46.    Qualcomm has directly infringed, and continues to directly infringe, either by itself or via its agent(s), at least Claim 1 of the '798 Patent as set forth under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the '798 Accused Products. Furthermore, Qualcomm makes and sells the '798 Accused Products outside of the United States and either delivers those products to its customers, distributors, and/or subsidiaries in the United States or, in the case that it delivers '798 Accused Products outside the United States, does so intending and/or knowing that those products are destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '798 Patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

47.    Furthermore, Qualcomm directly infringes the '798 Patent through its direct involvements in, and control of, the activities of subsidiaries and agents. Subject to Qualcomm's direction and control, the subsidiaries and agents engage in activities that constitute direct infringement of the '798 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the '798 Accused Products. Qualcomm receives direct financial benefit from such infringements by its U.S.-based subsidiaries and agents.

48.    By way of illustration only, the '798 Accused Products perform each and every element of Claim 1 of the '798 Patent. The '798 Accused Products perform "a method of operating an integrated circuit, the method comprising" the steps of Claim 1. For example, the '798 Accused Products, such as the Snapdragon 8 Gen 2 Mobile Platform, support LPDDR5X memory that comply with JEDEC standards and perform the steps described below:



(Snapdragon-8-Gen-2-Product-Brief.pdf)

49.    The '798 Accused Products perform a method that includes "supplying an instruction portion of an external command from an external controller to the integrated circuit to specify an operation to be performed by the integrate circuit." For example, the '798 Accused Products that support LPDDR5/5X memory supply an instruction portion of an external command (e.g., PRECHARGE (PRE) (Per Bank, All Banks) command) from an external memory controller to the semi-conductor component of the LPDDR5/5X memory on lines CA0 to CA6 to specify an operation to be performed:

**Table 201 — Command Truth Table**

| SDRAM COMMAND | BK ORG (BG, 16B, 8B) | SDR CMDPIN CS | DDR COMMAND PINS CA0 | CA1 | CA2 | CA3 | CA4 | CA5 | CA6 | CK_t edge | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| (ACT-2) | Any | X | | | | | | | | R1 | F1 |
| PRECHARGE (PRE) (Per Bank, All Banks) | Any | H | L | L | L | H | H | H | H | R1 | 1, 2, 3, 5 |
| | BG | X | BA0 | BA1 | BG0 | BG1 | | | | | |
| | 16B | | BA0 | BA1 | BA2 | BA3 | V | V | AB | F1 | |
| | 8B | | BA0 | BA1 | BA2 | V | | | | | |
| PRECHARGE (PRE) (Per Bank, w/o address sample) | Any | H | L | L | L | H | H | H | H | R1 | 1, 2, 3, 14 |
| | BG | X | BA0 | BA1 | BG0 | BG1 | | | | | |
| | 16B | | BA0 | BA1 | BA2 | BA3 | V | L | L | F1 | |
| PRECHARGE (PRE) (Per Bank, w/ address sample) | Any | H | L | L | L | H | H | H | H | R1 | 1, 2, 3, 15 |
| | BG | X | BA0 | BA1 | BG0 | BG1 | | | | | |
| | 16B | | BA0 | BA1 | BA2 | BA3 | V | H | L | F1 | |
| REFRESH (REF) (Per Bank, All Banks) | Any | H | L | L | L | H | H | H | L | R1 | 1, 2, 3, 5 |
| | BG | X | BA0 | BA1 | BG0 | | L | V | V | F1 | |
| | 16B | | BA0 | BA1 | BA2 | L | V | V | AB | | |
| | 8B | | BA0 | BA1 | BA2 | | V | V | | | |
| RFMab/pb | Any | H | L | L | L | H | H | H | L | R1 | 1, 2, 3, 5, 16 |
| | BG | X | BA0 | BA1 | BG0 | | SB0 | | | F1 | |
| | 16B | | BA0 | BA1 | BA2 | H | SB0 | L | AB | | |
| | 8B | | BA0 | BA1 | BA2 | | V | | | | |
| DRFMpb | Any | H | L | L | L | H | H | H | L | R1 | 1, 3 |
| | BG | X | BA0 | BA1 | BG0 | H | BG1 | H | L | F1 | |
| | 16B | | BA0 | BA1 | BA2 | | BA3 | | | | |

(JEDEC Standard No. 209-5C, Page 190)

50.    The '798 Accused Products perform a method a method that includes "for at least some types of instructions, supplying an attributes portion of the external command from the external controller to the integrated circuit to provide additional information about the operation to be performed, the attributes portion being supplied with a delay relative to the instruction

portion, the delay providing sufficient time for the integrated circuit to enable receiver circuitry for processing the attributes portion in response to receipt of the instruction portion." For example, the '798 Accused Products that support LPDDR5/5X memory supply an attributes portion of an external command (e.g., PRECHARGE (PRE) (Per Bank, All Banks) command) from an external memory controller to the semi-conductor component of the LPDDR5/5X memory on, for example, lines CA0 to CA3 to specify the bank addresses BA and/or the bank group addresses BG. The attributes portion the command is supplied, at CK_t edge F1 (falling edge) of clock, with a delay (one clock cycle) relative to the instruction portion of the command, which is supplied at CK_t edge R1 (rising edge) of clock. The one clock cycle between CK_t edge F1 and CK_t edge R1 of clock allows for sufficient time to process the attributes portion of the command in response to receipt of the instruction portion of the command – e.g., in the case of the PRECHARGE command, allow for the determination of the Bank addresses (BA) and/or the bank group addresses (BG) of the bank(s) to be precharged:

| SDRAM COMMAND | BK ORG (BG, 16B, 8B) | SDR CMDPIN CS | DDR COMMAND PINS | | | | | | | CK_t edge | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | CA0 | CA1 | CA2 | CA3 | CA4 | CA5 | CA6 | | |
| PRECHARGE (PRE) (Per Bank, All Banks) | Any | H | L | L | L | H | H | H | H | R1 | 1, 2, 3, 5 |
| | BG | X | BA0 | BA1 | BG0 | BG1 | V | V | AB | F1 | |
| | 16B | | BA0 | BA1 | BA2 | BA3 | | | | | |
| | 8B | | BA0 | BA1 | BA2 | V | | | | | |
| PRECHARGE (PRE) (Per Bank, w/o address sample) | Any | H | L | L | L | H | H | H | H | R1 | 1, 2, 3, 14 |
| | BG | X | BA0 | BA1 | BG0 | BG1 | V | L | L | F1 | |
| | 16B | | BA0 | BA1 | BA2 | BA3 | | | | | |
| PRECHARGE (PRE) (Per Bank, w/ address sample) | Any | H | L | L | L | H | H | H | H | R1 | 1, 2, 3, 15 |
| | BG | X | BA0 | BA1 | BG0 | BG1 | V | H | L | F1 | |
| | 16B | | BA0 | BA1 | BA2 | BA3 | | | | | |
| REFRESH (REF) (Per Bank, All Banks) | Any | H | L | L | L | H | H | H | H | R1 | 1, 2, 3, 5 |
| | BG | X | BA0 | BA1 | BG0 | | V | V | | F1 | |
| | 16B | | BA0 | BA1 | BA2 | L | V | V | AB | | |
| | 8B | | BA0 | BA1 | BA2 | | V | V | | | |
| RFMab/pb | Any | H | L | L | L | H | H | H | H | R1 | 1, 2, 3, 5, 16 |
| | BG | X | BA0 | BA1 | BG0 | | SB0 | | | F1 | |
| | 16B | | BA0 | BA1 | BA2 | H | SB0 | L | AB | | |
| | 8B | | BA0 | BA1 | BA2 | | V | | | | |
| DRFMpb | Any | H | L | L | L | H | H | H | H | R1 | 1, 3 |
| | BG | X | BA0 | BA1 | BG0 | | BG1 | | | F1 | |
| | 16B | | BA0 | BA1 | BA2 | H | BA3 | H | L | | |

**Table 201 — Command Truth Table (cont'd)**

NOTE 1   LPDDR5 commands are one clock cycles long and defined by the states of CS at the rising edge (R1) of clock and CA[6:0] at the rising edge (R1) and the falling edge (F1) of clock. Note that some operations such as ACTIVATE, MODE REGISTER WRITE or WCK2CK SYNC (WS_RD, WS_WR, WS_FS) require two commands to initiate.

(JEDEC Standard No. 209-5C, Pages 190-191)

### *Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

51.    In addition and/or in the alternative to its direct infringements, Qualcomm has indirectly infringed and continues to indirectly infringe one or more claims of the '798 Patent by knowingly and intentionally inducing others, including its subsidiaries, agents, partners, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '798 Accused Products.

52.    At a minimum, Qualcomm has knowledge of the '798 Patent since being served with this Complaint. Qualcomm also had knowledge of the '798 Patent since receiving a notice

letter from Polaris providing details of its infringements prior to the filing of this Complaint. Since receiving notice of its infringements, Qualcomm has actively induced the direct infringements of its subsidiaries, agents, partners, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with knowledge, or willful blindness to the fact, that the acts induced constitute infringements of the '798 Patent. Indeed, Qualcomm has intended to cause, continues to intend to cause, and has taken and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '798 Accused Products, creating and/or maintaining established distribution channels for the '798 Accused Products into and within the United States; manufacturing the '798 Accused Products in conformity with U.S. laws and regulations, distributing or making available datasheets supporting use of the '798 Accused Products that promote their features, specifications, and applications, promoting the incorporation of the '798 Accused Products into end-user products, and providing technical support and/or related services for these products to purchasers in the United States.

### *Damages*

53.    On information and belief, despite having knowledge of the '798 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '798 Patent, Qualcomm has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Qualcomm infringing activities relative to the '798 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Polaris is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed.

54.    Polaris has been damaged by Qualcomm's infringing conduct described in this Count. Qualcomm is, thus, liable to Polaris in an amount that adequately compensates Polaris for Qualcomm's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 8,117,526)

55.    Plaintiff incorporates the preceding paragraphs herein by reference.

56.    This cause of action arises under the patent laws of the United States, and, particularly, 35 U.S.C. §§ 271, *et seq.*

57.    Polaris is the owner of all substantial rights, title and interest in and to the '526 Patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

58.    The '526 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on February 14, 2012, after full and fair examination.

59.    Qualcomm has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '526 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import, Qualcomm products, their components and processes, and/or products containing the same, that incorporate the fundamental technologies covered by the '526 Patent, including, but not limited to, its Snapdragon 6, 7, 8, and X Series products that support LPDDR5/5X memory, and Qualcomm's Automotive platforms that support LPDDR5 or LPDDR5X memory, such as Snapdragon Cockpit devices and modules, Snapdragon Ride and Ride Flex devices and modules, Snapdragon Cockpit Elite devices and

modules, and Snapdragon Ride Elite devices and modules (collectively, "the '526 Accused Products").

***Direct Infringement (35 U.S.C. § 271(a))***

60.    Qualcomm has directly infringed, and continues to directly infringe, one or more of claims of the '526 Patent in this District and elsewhere in Texas and the United States.

61.    Qualcomm has directly infringed, and continues to directly infringe, either by itself or via its agent(s), at least Claim 10 of the '526 Patent as set forth under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the '526 Accused Products. Furthermore, Qualcomm makes and sells the '526 Accused Products outside of the United States and either delivers those products to its customers, distributors, and/or subsidiaries in the United States or, in the case that it delivers '526 Accused Products outside the United States, does so intending and/or knowing that those products are destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '526 Patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

62.    Furthermore, Qualcomm directly infringes the '526 Patent through its direct involvements in, and control of, the activities of subsidiaries and agents. Subject to Qualcomm's direction and control, the subsidiaries and agents conduct activities that constitute direct infringement of the '526 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the '526 Accused Products. Qualcomm receives direct financial benefit from such infringements by its U.S.-based subsidiaries and agents.

63.    By way of illustration only, the '526 Accused Products comprise each and every element of Claim 10 of the '526 Patent. The '526 Accused Products are "an apparatus for generating a transmit signal comprising data bits, the apparatus comprising" all limitations of

Claim 10. For instance, the '526 Accused Products, such as SM8459, support LPDDR5/5X memory that communicates with memory controllers EBI0 to EBI3 that generates "a transmit signal" including the DQ, DMI and RDQS_t/Parity signals during writes to the LPDDR5/5X memory:



(80-11140-1 SM8450 SM8450P Data Sheet.pdf)



**Figure 280 — Write Command Showing Link ECC Transfer**

(JEDEC Standard No. 209-5C, Page 468)

64.    The '526 Accused Products further comprise "a circuit for providing an indicator indicating whether the data bits represent an original message or an inverted version thereof." For

25

example, the '526 Accused Products support LPDDR5/5X memory that comply with the JEDEC Standard which provides that a memory controller can first perform DBI/DMI encoding of the data which identifies whether to store/output the true or inverted data. The DBI/DMI Encode block receives 128 DQ signals – 16 DQ bytes and produces 16 DMI signals for each byte. "The data bits" correspond to the DQ byte Beat 1:

### 7.7.8.6    ECC and DBI – Order of Operations

When transmitting Write data, the Controller can first perform DBI/DMI encoding of the data (if DBI is enabled). DBI encoding will follow the same rules as on LPDDR4. It can then perform ECC generation on the resulting Data and DMI bits (if ECC is enabled). It is important to perform ECC generation after the DBI encoding, because Masked writes can alter the data during DBI encoding. The modified data is used for calculating the data ECC in all cases. The 6-bit DMI ECC and 9-bit data ECC are both transmitted on the RDQS_t pin and sent at the bit-times previously defined. Figure 282 illustrates the data flow.

When receiving Write data, the DRAM will first perform checking & correction on the DMI ECC. In parallel, it will perform ECC checking and correction on the data itself. Once the DMI is verified, it will proceed to perform DBI decoding of the data. DBI decoding follows the same rules as on LPDDR4. The Data ECC can be checked prior to DBI decoding due to the unique characteristics of the ECC code (the nature of the code is such that inverting an entire beat of the data would not change the ECC). The Write operation diagram illustrates this data flow.





**Figure 282 — Data Flow on a Memory Write Operation**

(JEDEC Standard No. 209-5C, Page 472)

26

65.    The '526 Accused Products further comprise "a processor for determining check information that depends on the data bits and the indicator." For example, the '526 Accused Products support LPDDR5/5X memory in compliance with the JEDEC Standard which provides that a memory controller can perform ECC (error correction code) generation on the Data and DMI bits as a result of the DBI/DMI encoding. According to the JEDEC Standard, a set of ECCs on a write command include 6 ECC bits on DMI (the indicator) and 9 bits on the data (data bits). The '526 Accused Products include a processor (blue box) for determining check information (green underline/box for ECC and DMI-ECC) that depends on the data bits (purple underline/arrow DQ) and the indicator (red underline/arrow DMI):





Figure 282 — Data Flow on a Memory Write Operation

### 7.7.8 Link ECC

Supporting Link ECC is an optional feature. In addition, DRAMs which support Link ECC need not do so at WCK frequencies less than or equal to 1600MHz. If supported by the DRAM, Link ECC may then be enabled or disabled by the controller as required by the system configuration, operating speed, or other requirements.

During each Write burst when Link ECC is enabled, ECC will be generated and checked across the 128 Data bits within a specified portion of the burst. ECC will be separately generated and checked across the 16 DMI bits within the same specified portion of the burst. In the case of the data ECC, the DBI encoded data must be used, as Masked Writes can modify data in a way which changes the ECC.

This ECC (6 bits on DMI + 9 bits on the data) would be received by the DRAM on the RDQS_t pin along with Write Data on the DQ pins and DBI/DM on the DMI pin as illustrated in Figure 280.



**Figure 280 — Write Command Showing Link ECC Transfer**



28

(JEDEC Standard No. 209-5C, Pages 468-470 and 472)

66.     The '526 Accused Products further comprise "a circuit for forming the transmit signal including the data bits, the indicator and at least a part of the check information." For example, the '526 Accused Products support LPDDR5/5X memory that comply with the JEDEC Standard which provides that a memory controller transmits the data bits (DQ), the indicator (DMI), and a least a part of the check information (ECC), which is transmitted on the RDQS_t pin:





**Figure 282 — Data Flow on a Memory Write Operation**

(JEDEC Standard No. 209-5C, Page 472)

67.     The '526 Accused Products are "an apparatus for generating a transmit signal comprising data bits" as discussed above, wherein "the check information is a checksum." For example, the '526 Accused Products support LPDDR5/5X memory that comply with the JEDEC

Standard which provides that a memory controller can perform ECC (error correction code) generation on the Data and DMI bits as a result of the DBI/DMI encoding where the check information (green underline ECC and DMI-ECC) is a checksum:



Figure 282 — Data Flow on a Memory Write Operation

(JEDEC Standard No. 209-5C, Page 472)

68.    The '526 Accused Products are "an apparatus for generating a transmit signal comprising data bits" as discussed above, wherein "the apparatus is capable of being coupled to a plurality of channels via which the data bits of the transmit signal are to be transmitted simultaneously in parallel." For example, the '526 Accused Products support LPDDR5/5X memory that comply with the JEDEC Standard and contain a plurality of channels on including the DQ, DMI and RDQS_t lines via which the data bits of the transmit signal are to be transmitted simultaneously in parallel:

30

**Table 1 — Pad Definition and Description**

| Symbol | Type | Description | Note |
|---|---|---|---|
| CK_t, CK_c | Input | **Clock:** CK_t and CK_c are differential clock inputs. All Double Data Rate (DDR) Command/Address inputs are sampled on both crossing points of CK_t and CK_c. The first crossing point is the rising(falling) edge of CK_t (CK_c) and second crossing point is falling(rising) edge of CK_t (CK_c). Single Data Rate (SDR) inputs, CS is sampled on the crossing point that is the rising(falling) edge of CK_t (CK_c). | |
| CS | Input | **Chip Select:** CS is part of the command code and is sampled on the rising(falling) edge of CK_t (CK_c) unless the device is in power-down or Deep Sleep mode where it becomes an asynchronous signal. | |
| CA[6:0] | Input | **Command/Address Inputs:** CA signals provide the Command and Address input according to the Command Truth Table. | |
| DQ[15:0] | I/O | **Data Input/Output:** Bi-direction data bus. | |
| WCK[1:0]_t WCK[1:0]_c | Input | **Data Clocks:** WCK_t and WCK_c are differential clocks used for WRITE data capture and READ data output. | |
| RDQS [1:0]_t , RDQS[1:0]_c | RDQS_t :I/O, RDQS_c :Output | **Read Data Strobe:** RDQS_t and RDQS_c are the differential output clock signals used to strobe data during a READ operation. And RDQS_t is also used as a Parity pin at Write with Link Protection enabled. | 1 |
| DMI[1:0] | I/O | **Data Mask Inversion:** DMI achieves multiple function such as Data Mask (DM), Data Bus Inversion (DBI), and Parity at read with ECC operation by setting the Mode Register and DMI is a bi-directional signal, and each byte of data has a DMI signal. | 1 |

(JEDEC Standard No. 209-5C, Page 472)

69.     The '526 Accused Products are "an apparatus for generating a transmit signal comprising data bits" as discussed above, wherein "the processor is configured to determine the checksum based on the data bits, the indicator, additional data bits and an additional indicator indicating whether the additional data bits represent an original additional message or an inverted version thereof." For example, the '526 Accused Products support LPDDR5/5X memory and determine the checksum (green box/arrow) based on the data bits (purple arrow), the indicator (red arrow), additional data bits (orange arrow) and an additional indicator indicating (blue arrow) whether the additional data bits represent an original additional message or an inverted version thereof:

31



**Figure 280 — Write Command Showing Link ECC Transfer**



The bits labeled M0-M15 appear on the DMI pin on beats 0-15 in numerical order (16-31 in the 2nd half of a BL32 burst). The check bits from this ECC appear on the RDQS_t pin on a write. There is no DMI ECC on a Read. C0-C5 appear on beats 1-6 of the burst in numerical order (17-22 in the 2nd half of a BL32 burst).

(JEDEC Standard No. 209-5C, Pages 468-470)

32

70.    The '526 Accused Products are "an apparatus for generating a transmit signal comprising data bits" as discussed above, wherein "the additional data bits and the additional indicator are part of an additional transmit signal to be transmitted via the plurality of channels prior to or after the transmit signal." For example, the '526 Accused Products support LPDDR5/5X memory that comply with the JEDEC Standard which provides that the additional data bits (Data Beat 2) and the additional indicator (DMI bit M2) are part of an additional transmit signal (blue box) to be transmitted via the plurality of channels prior to or after the transmit signal (red box):



**Figure 280 — Write Command Showing Link ECC Transfer**

(JEDEC Standard No. 209-5C, Page 468)

71.    The '526 Accused Products are "an apparatus for generating a transmit signal comprising data bits" as discussed above, wherein "the circuit for forming the transmit signal is configured to form the transmit signal including a first portion of the checksum and to form the additional transmit signal including a second portion of the checksum." For example, the '526 Accused Products support LPDDR5/5X memory that comply with the JEDEC Standard which provides that the set of ECCs being transmitted includes a first and a second DMI ECC bits among 6 DMI ECC bits and a first and a second Data ECC bits among 9 Data ECC bits:



**Figure 280 — Write Command Showing Link ECC Transfer**

(JEDEC Standard No. 209-5C, Page 468

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

72.     In addition and/or in the alternative to its direct infringements, Qualcomm has indirectly infringed and continues to indirectly infringe one or more claims of the '526 Patent by knowingly and intentionally inducing others, including its subsidiaries, agents, partners, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '526 Accused Products.

73.     At a minimum, Qualcomm has knowledge of the '526 Patent since being served with this Complaint. Qualcomm also had knowledge of the '526 Patent since receiving a notice letter from Polaris providing details of its infringements prior to the filing of this Complaint. Since receiving notice of its infringements, Qualcomm has actively induced the direct infringements of its subsidiaries, agents, partners, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with knowledge, or willful blindness to the fact, that the acts induced constitute infringements of the '526 Patent. Indeed, Qualcomm has intended to cause, continues to intend to cause, and has taken and continues to take, affirmative steps to induce infringement by, among

other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '526 Accused Products, creating and/or maintaining established distribution channels for the '526 Accused Products into and within the United States; manufacturing the '526 Accused Products in conformity with U.S. laws and regulations, distributing or making available datasheets supporting use of the '526 Accused Products that promote their features, specifications, and applications, promoting the incorporation of the '526 Accused Products into end-user products, and providing technical support and/or related services for these products to purchasers in the United States.

*Damages*

74.     On information and belief, despite having knowledge of the '526 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '526 Patent, Qualcomm has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Qualcomm infringing activities relative to the '526 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Polaris is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed.

75.     Polaris has been damaged by Qualcomm's infringing conduct described in this Count. Qualcomm is, thus, liable to Polaris in an amount that adequately compensates Polaris for Qualcomm's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

76.     Polaris is entitled to recover from Qualcomm damages sustained by Polaris as a consequence of Qualcomm's wrongful acts and willful infringements in an amount subject to proof

at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

77.    Polaris has incurred, and will incur, attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Polaris is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

Polaris hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Polaris respectfully requests that the Court find in its favor and against Qualcomm, and that the Court grant Polaris the following relief:

(i)    Judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Qualcomm;

(ii)    Judgment that one or more claims of the Asserted Patents have been willfully infringed, either literally and/or under the doctrine of equivalents, by Qualcomm;

(iii)    Judgment that Qualcomm must account for and pay to Polaris all damages and costs incurred by Polaris because of Qualcomm's infringing activities and other conduct complained of herein, including accounting for any sales or damages not presented at trial;

(iv)    Judgment that Qualcomm must account for and pay to Polaris reasonable, ongoing, post judgment royalties because of Qualcomm's infringing activities, including for continuing infringing activities and other conduct complained of herein;

(v)    Judgment that Polaris be granted pre-judgment and post judgment interest on damage caused by Qualcomm's infringing activities and other conduct complained of herein;

(vi)   Judgment that this case is exceptional under the provisions of 35 U.S.C. § 285, including an award of enhanced damages; and

(vii)  Such other and further relief as the Court deems just and equitable.


Dated: November 14, 2025                     Respectfully submitted,

                                             /s/ Edward R. Nelson III
                                             Edward R. Nelson III
                                             State Bar No. 00797142
                                             Nelson Bumgardner Conroy PC
                                             3131 West 7th Street, Suite 300
                                             Fort Worth, Texas 76107
                                             Tel: (817) 377-9111
                                             ed@nelbum.com

                                             Ryan P. Griffin
                                             State Bar No. 24053687
                                             Jonathan H. Rastegar
                                             State Bar No. 24064043
                                             David T. DeZern
                                             State Bar No. 24059677
                                             Nelson Bumgardner Conroy PC
                                             2727 N. Harwood St., Suite 250
                                             Dallas, TX 75201
                                             Tel: (214) 446-4950
                                             ryan@nelbum.com
                                             jon@nelbum.com
                                             david@nelbum.com

                                             **Attorneys for Plaintiff**
                                             **Polaris Innovations Limited**